**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

TAI TAN HUYNH,

              Petitioner,

v.                                        Case No. 3:25-cv-1536-WWB-MCR

WARDEN, BAKER CORRECTIONAL
INSTITUTION, et al.,

              Respondents.

_____

## ORDER

Petitioner Tai Tan Huynh, an immigration detainee at Baker Correctional Institute, initiated this action through counsel by filing a Verified Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Doc. 1) with exhibits (Doc. Nos. 1-1 to 1-9).  Respondents filed a Response (Doc. 11) with exhibits (Doc. Nos.11-1 to 11-8).  Petitioner filed a counseled Reply (Doc. 17) with exhibits (Doc. Nos. 17-1 to 17-4).  The case is ripe for review.

I.     **PETITION**

Petitioner, a native of Vietnam, entered the United States as a refugee in 1992 as part of the Orderly Departure Program established by the United States following the Vietnam War.  (Doc. 1 at 1, 13).  At that time, Petitioner was 15 years old, and as part of that program, Petitioner obtained lawful permanent resident status.  (*Id.* at 13, 14).  In 1999, Petitioner was convicted in South Dakota of reckless discharge of a firearm and was sentenced to six-months of work release.  (*Id*. at 15).  Subsequently, Petitioner was placed in removal proceedings, detained for one day, and then released.  (*Id.*).  On

February 11, 2003, an immigration judge ordered Petitioner removed to Vietnam based on his criminal conviction.  (*Id.*).  Petitioner was placed on an Order of Supervision ("**OSUP**") on March 3, 2008.  (*Id.*).

More than seventeen years later, on May 23, 2025, at a routine check-in, Petitioner "was enrolled into the Intensive Supervision Appearance Program . . . without explanation," and for the first time, required to wear an ankle monitor.  (*Id.* at 16).  United States Immigration and Customs Enforcement ("**ICE**") also "provided him with a letter entitled *Plan of Action for Self-departure*" requiring Petitioner to "provide a travel itinerary to ICE officials by July 23, 2025, for departure to Vietnam by no later than August 25, 2025."  (*Id.*).  In compliance with the letter, Petitioner attempted to obtain a passport from Vietnam, but the consulate "returned the passport application to Petitioner and declined to process it, citing his order of removal."  (*Id.*).  On June 3, 2025, Petitioner applied to the United States Citizenship and Immigration Services "for parole-in-place," and the application remains pending.  (*Id.* at 16–17).  Further, Petitioner's wife submitted a petition for alien relative, which likewise remains pending.  (*Id.* at 17).  Petitioner also submitted to ICE an application for stay of removal, but ICE denied his request.  (*Id.*).  Despite Petitioner's efforts and compliance with his OSUP, at his scheduled check-in on June 14, 2025, ICE detained him.  (*Id.* at 17–18).  A few days after his detention, on June 18, 2025, an airline ticket to Vietnam was purchased for Petitioner for July 28, 2025.  (*Id.* at 16).

Petitioner raises the following claims: Violation of Fifth Amendment Substantive Due Process and *Zadvydas v. Davis*, 533 U.S. 678 (2001), based on Petitioner's prolonged detention ("**Count One**"); Violation of Fifth Amendment Substantive (Count Two) and Procedural (Count Three) Due Process based on the improper revocation of

2

his OSUP; Violation of the Administrative Procedure Act (Count Four); and Violation of the Doctrine set forth in *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954) (Count Five). (Doc. 1 at 18–29). As relief, he seeks, *inter alia*, immediate release from immigration detention. (*Id.* at 30).

## II.    ANALYSIS

The Court finds that Petitioner is entitled to relief on Count One; thus, the Court need not address his other claims. *See Banks v. Dretke*, 540 U.S. 668, 689 n.10 (2004) (declining to address an additional claim in a habeas petition after granting relief on another claim because "any relief [petitioner] could obtain on that claim would be cumulative"); *see, e.g.*, *Pena-Gil v. Lyons*, No. 25-CV-03268, 2025 WL 3268333, at *4 (D. Colo. Nov. 24, 2025)[1] ("Because the Court will grant petitioner's petition on the basis of his *Zadvydas* claims, . . . it need not reach petitioner's remaining claims that contest petitioner's detention."). Therefore, the following analysis focuses solely on Count One.[2]

Once an alien is ordered removed, immigration detention is governed by 8 U.S.C. § 1231. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 544 (2021) ("§ 1231 explains what to do if the alien is ordered removed."); *see also Deshati v. Noem*, No. 25-cv-15940, 2025 WL 3204227, at *2 (D.N.J. Nov. 17, 2025) ("The statute governing post-final order of removal immigration detention is 8 U.S.C. § 1231."). Pursuant to § 1231(a)(1)(A), "when an alien is ordered removed, the Attorney General shall remove the alien from the

---

[1] Although district court orders are not binding, they may be cited as persuasive authority. *See Stone v. First Union Corp.*, 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects").

[2] Respondents' jurisdictional arguments appear to focus on Petitioner's claims relating to the revocation of his OSUP. (Doc. 11 at 3–6). Any argument that the Court lacks jurisdiction to adjudicate Petitioner's ripe *Zadvydas* claim is without merit.

United States within a period of 90 days."   During the removal period, detention is mandatory.  8 U.S.C. § 1231(a)(2)(A).

The Supreme Court has held that indefinite detention of aliens raises serious constitutional concerns.  *Zadvydas*, 533 U.S. at 690–99.  Once an order of removal is final, the government may continue to detain an alien only for a reasonable amount of time*.   See id.* at 699–701.   The reasonableness of the detention is to be measured "primarily in terms of the statute's basic purpose, namely, assuring the alien's presence *at the moment of removal*."  *Id.* at 699 (emphasis added).  The Supreme Court held that six months is a presumptively reasonable period to detain a removable alien awaiting deportation.  *Id.* at 700–01*.*  "Although not expressly stated, the Supreme Court appears to view the six-month period to include the 90-day removal period [from section 1231(a)(1)(A)] plus 90 days thereafter."  *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002).

After that six-month period has passed, if the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing."  *Id.* at 1052 (quoting *Zadvydas*, 533 U.S. at 701).  Thus, "in order to state a claim under *Zadvydas* the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future."  *Id.*  If an alien makes these showings, then the burden shifts to the government to rebut the presumption with sufficient evidence establishing that there is a "significant likelihood of removal in the reasonably foreseeable future."  *Zadvydas*, 533 U.S. at 701.

Here, ICE took Petitioner into custody on June 14, 2025, and he filed this case 184 days later on December 15, 2025. It is undisputed that Petitioner was in ICE custody over six months at the time he filed this case. Thus, the Court must consider whether Petitioner has "provide[d] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Akinwale*, 287 F.3d at 1052. In the Petition, Petitioner explains that in 2008, the United States and Vietnam entered into a memorandum of understanding in which Vietnam agreed to accept deportees only if they entered the United States after July 12, 1995. (Doc. 1 at 13). But for individuals like Petitioner, who entered prior to that date, the Department of Homeland Security ("**DHS**") "cannot secure travel documents and cannot effectuate removal within a reasonably foreseeable period." (*Id.* at 14). He further explains that notwithstanding being ordered removed in 2003, he has remained in the United States on an OSUP for more than twenty years. (*See id.* at 15–16, 22). And despite Petitioner's recent efforts in attempting to obtain a passport to self-depart at ICE's request, the consulate declined to issue him a passport "citing his order of removal," and he has now remained in ICE custody for over six months with no progress on his removal. (*Id.* at 16).

Given the record, the Court finds that Petitioner has provided good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Thus, the burden shifts to Respondents to "respond with evidence sufficient to rebut that showing." *Akinwale*, 287 F.3d at 1052.

Respondents contend that there is a significant likelihood of removal in the reasonably foreseeable future "based on the facts set forth in the" Declaration of Deportation Officer Milciades Amparo Jr. (Doc. 11 at 7 (citing Doc. 11-2)). Officer Amparo

declares in pertinent part as follows.  Petitioner entered the United States on February 16, 1992.  In 1997, he was convicted in state court "for three counts of Burglary in the third degree . . . and sentenced to three to eight years of imprisonment."  On February 11, 2003, an immigration judge ordered Petitioner removed from the United States to Vietnam.  On August 24, 2004, Petitioner was placed on an OSUP.  During the more than twenty years that followed, Petitioner missed two scheduled OSUP appointments on December 3, 2019, and May 22, 2025.  On May 23, 2025, DHS issued Petitioner a plan for self-departure but then took him into custody on June 14, 2025.  "On July 9, 2025, Petitioner refused to complete an application for a travel document. At the time Petitioner claimed he could not read or write and requested the assistance of his wife."  Subsequently, on August 18, 2025, Enforcement and Removal Operations ("**ERO**") determined that Petitioner's continued detention was warranted based on his "criminal history and the existence of a significant likelihood of removal in the reasonably foreseeable future."  On August 25, 2025, ERO submitted an electronic travel document request "for evaluation by the Detention and Deportation Officer . . . responsible for Vietnam."  On September 11, 2025, an update was received indicating only that the request was still pending.  On October 12, 2025, and January 7, 2026,[3] "ERO requested a status update on" the travel document request, but apparently no update was provided.  Based on these facts, Officer Amparo concludes that "there is a significant likelihood that Petitioner will be removed in the reasonably foreseeable future."  (Doc. 11-2 at 2–4).

---

[3] The Declaration includes a scrivener's error with respect to the year.  (*See* Doc. 11-2 at 3 ("On January 7, 2025 . . .")).

Respondents' assertion that Petitioner's detention remains "reasonable under *Zadvydas* given the [significant likelihood of removal in the reasonably foreseeable future] to Vietnam," (Doc. 11 at 7), is speculative and unsupported.  Officer Amparo's Declaration merely explains that a travel document request was submitted on August 25, 2025, "for evaluation by the Detention and Deportation Officer . . . responsible for Vietnam."  (Doc. 11-2 at 3).  Although the travel document request was submitted approximately six months ago, there has been no status update or indication that Vietnam has agreed to accept Petitioner.  Respondents have not provided any details about why a travel document has not been obtained in the past twenty-plus years[4] or whether there are changed circumstances such that a travel document is likely to be obtained now.  The approximate six months that have passed since the submission of the request for a travel document— with no substantive status update—weighs against Respondents' position, and Respondents otherwise fail to present any evidence showing that Petitioner's removal is any more likely now than it was when he was detained on June 14, 2025.

Based on the evidence presented, the Court finds Respondents have failed to show a significant likelihood that Petitioner will be removed in the reasonably foreseeable future.  Therefore, Petitioner is entitled to release from detention under *Zadvydas*.

Therefore, it is **ORDERED** and **ADJUDGED** as follows:

1. The Petition (Doc. 1) is **GRANTED** as to Count One and otherwise **DENIED without prejudice as moot**.  Respondents shall release Petitioner **within 24 hours** of this Order, and they shall facilitate his transportation from the

---

[4] Petitioner was ordered removed on February 11, 2003, and the Board of Immigration Appeals dismissed his appeal on July 21, 2004.  (Doc. 11-2 at 3).

detention facility by notifying his counsel when and where he can be collected.

2. The **Clerk** shall enter judgment granting the Petition as to Count One and otherwise denying the Petition without prejudice as moot, terminate any pending motions, and close the file.[5]

**DONE AND ORDERED** in Jacksonville, Florida, on February 25, 2026.

_____
WENDY W. BERGER
UNITED STATES DISTRICT JUDGE

c:
Counsel of Record

---

[5] Insofar as Petitioner requests attorney's fees, he may make such a request in a separate motion, if appropriate.  *See* M.D. Fla. R. 7.01.  Any such motion must be supported by a memorandum of law.

8